**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| Ralph Ostrom, Jr., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>)<br>) | C/A No.: 4:05-cv-2125-MBS<br><br><br><br>**O P I N I O N   A N D   O R D E R** |

Plaintiff Ralph Ostrom, Jr., filed an application for a period of disability and disability insurance benefits on September 15, 2002, alleging disability since November 26, 2000 because of hearing loss, diabetes, breathing problems, anxiety, depression, memory loss, and pain from arthritis, and degenerative disc disease. His application was denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which hearing was held on July 29, 2004. In a decision dated December 20, 2004, the ALJ determined that Plaintiff was not entitled to a period of disability or disability insurance benefits under Sections 216(i) and 223, respectively, of the Social Security Act. The decision of the ALJ became the "final decision" of the Commissioner on May 27, 2005, after the Appeals Council determined that there was no basis for granting Plaintiff's request for review. Plaintiff thereafter brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the "final decision" of the Commissioner.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Thomas E. Rogers, III, for a Report and Recommendation. On February 14, 2007, the Magistrate Judge filed a Report and Recommendation in which he recommended that the Commissioner's finding be affirmed. Plaintiff filed objections to the Report and Recommendation on March 5, 2007 to which Defendant filed a reply on March 15, 2007.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a *de novo* determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b).

### I.    FACTS.

Presently, Plaintiff is a sixty-three year old man. A college graduate, Plaintiff's relevant past work experience includes employment as a high school teacher, community services coordinator, and supervisor of volunteer services. Plaintiff alleges he has not engaged in substantial gainful activity since November 25, 2000.

Plaintiff has an extensive medical history. First, Plaintiff underwent back surgery in 1996. Doctor Ross D. Lynch was Plaintiff's treating orthopedic surgeon and operated on Plaintiff for the back and leg injuries sustained by Plaintiff in a fall. (Medical Notes of Ross D. Lynch, M.D. (Transcript 144)) Following Plaintiff's surgery, Dr. Lynch wrote: "It appears that Ralph has really stabilized. . . . he would probably have a 35-40% whole person impairment. Ralph is dismissed from treatment having reached maximum medical improvement." (*Id.* (Transcript 142))

Plaintiff underwent an additional back surgery in January 1999. Doctor Scott B. Boyd, Plaintiff's treating neurosurgeon, conducted the operation after MRI tests revealed that Plaintiff had lumbar disc disease with nerve root compression. In treatment notes dated February 23, 1999, Dr. Boyd wrote:

> [Plaintiff] has great fear that he is going to have continued back pain, and therefore, this has really left [Plaintiff] in an emotional state unfit to work. I feel very strongly in communicating to [Plaintiff] that he would be very disappointed with a life of disability, and [he] needs to, 'bite the bullet,' and get back to work. . . . I have told him if he cannot work after having tried it, then disability may be appropriate, but for now we need to give it a shot. I will allow him to return to work, and I have tried to reassure him that his back problems are not out of proportion to many other peoples, and that while he has real and genuine pain, we cannot predict his out come [sic] at this point.

(Medical Notes of Scott B. Boyd, M.D. (Transcript 201)) Following a car accident, Plaintiff scheduled another appointment with Dr. Boyd on June 1, 2000 for accident-related pain in his back and legs. (*Id.* (Transcript 200)) In treatment notes, Dr. Boyd set forth his diagnosis as follows:

> [Plaintiff] has some serious and chronic psychiatric problems which I think are largely related to anxiety and panic. I have tried to reassure him that I think his symptoms will improve and that nothing has happened that would require further surgery. . . . I think the symptoms that he is having are secondary to his anxiety more than any new changes in his spine.

(*Id.* (Transcript 200))

Plaintiff was also treated for his spinal and back injuries by Doctor Richard P. Murray. In a September 18, 2000 letter, Dr. Murray wrote that "[Plaintiff] is doing well with good range of motion in his neck and only mild stiffness with extreme ranges of motion. . . . His final diagnosis was cervical strain." (Letter of Richard Murray, M.D., September 28, 2000 (Transcript 268)) In a letter written one week later, Dr. Murray offered an additional recommendation: "Plaintiff is unable to tolerate musculoskeletal injuries. If his work involves this type [of] problem, I do not recommend he continue [his] position." (Letter of Richard Murray, M.D., October 5, 2000 (Transcript 266))

At the time of Dr. Murray's letters, Plaintiff was employed as a high school teacher with Fairfield County School District. Plaintiff testified that in 2000 "while I was [teaching] I was hit

by some students." (ALJ Hearing (Transcript 400)) To avoid the risk of additional injuries, Plaintiff requested transfer to an administrative position, for medical reasons. (*Id.*) The school district denied Plaintiff's request. (*See* Letter of William Ross, October 26, 2000 (Transcript 119)) Plaintiff subsequently terminated his employment with the school district. (Letter of William Ross, November 21, 2000 (Transcript 108)) Plaintiff's last day of employment was December 1, 2000.

In 2002 and 2003, Plaintiff underwent treatment for his breast, gallbladder, and liver. (ALJ Hearing (Transcript 397)) Specifically, during his administrative hearing, Plaintiff testified to a "mastectomy on the right side and then I had the mastectomy on the left side. And then I had gallbladder surgery last year. . . . I'm [now] seeing a transplant liver surgeon about every 6 months." (*Id.*) Dr. Terry Norton's 2003 treatment notes confirm Plaintiff's breast, gallbladder, and liver disorders. (Medical Notes of Terry O. Norton, M.D. (Transcript 315-16)) Dr. Norton operated on Plaintiff in May 2003 to treat these disorders, which included removal of Plaintiff's gallbladder. (*Id.* (Transcript 315)) December 29, 2003 tests performed by Doctor William C. McLain, III, revealed no serious cardiac, musculoskeletal, neurological, or psychiatric problems. (Medical Notes of William C. McLain, III (Transcript 341))

Plaintiff also reported several additional ailments in his application for disability benefits. For example, Plaintiff alleges severe hearing loss in his right ear, diabetes, anxiety, depression, and memory loss. A 2003 examination by Doctor Einar W. Anderson revealed "[Plaintiff] was totally unable to hear whispered or spoken words out of his right ear." (Medical Notes of Einar W. Anderson, M.D. (Transcript 226)) Dr. Ginsberg, a physician referred to Plaintiff by the Social Security Commission, concluded that Plaintiff's mental health was "impaired due to adjustment problems" to his physical impairments. (Medical Notes of J.P. Ginsberg, Ph.D. (Transcript 233))

Plaintiff was diagnosed with an "adjustment disorder with depression and anxiety." (*Id.*) In March 2003, a psychologist, Edward D. Waller, Ph.D., concluded that Plaintiff had an anxiety-related disorder with a depressed mood and that the mental impairments were not severe. (Psychiatric Review (Transcript 299-311)) Finally, medical evidence from 2000 to 2003 shows that Plaintiff's weight has fluctuated from 290 to 319 pounds. (*See* Medical Notes of Internal Medicine Associates (Transcript 255-265))

The ALJ viewed the Plaintiff's allegations regarding his pain and limited functional capacity to be not credible. (ALJ Decision (Transcript 15-22)) The ALJ determined that Plaintiff did not have a severe mental impairment because his mental disorder resulted in no more than a mild restriction of his activities of daily living. Further, the ALJ found that, while Plaintiff has a combination of physical impairments that were severe, the ALJ determined that Plaintiff could still return to his past relevant work as a supervisor of voluntary services. (*Id.*) Plaintiff had the capacity for sedentary and light work not involving the lifting of more than ten pounds further restricted because of his obesity to allow for only occasional balancing, stooping, kneeling, crouching, and crawling. Accordingly, the ALJ determined that Plaintiff was not under a disability as defined in the Social Security Act. (*Id.*)

**II.     STANDARD OF REVIEW.**

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes

a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "The courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58. The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III.    DISCUSSION.

Plaintiff first objects to the Magistrate Judge's finding that the ALJ adequately addressed Plaintiff's mental impairments. Plaintiff contends that the ALJ failed to properly consider mental health evaluations of Doctors J.P. Ginsberg and Edward D. Waller. The court disagrees.

An ALJ is required to explicitly indicate "the weight given to all relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231 (4th Cir. 1984). As held by the Fourth Circuit,

> Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that this decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

*Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977) (quoting *Oppenheim v. Finch*, 495 F.2d 396,

397 (4th Cir. 1974)). The court finds that the ALJ gave an adequate explanation of how Plaintiff's mental impairments were evaluated. The ALJ explained the probative exhibits concerning the Plaintiff's mental disorder. The ALJ explained that the mild functional limitations described by Dr. Ginsberg were controlled by anti-depressant medication, particularly in light of Dr. Murray's treatment notes of 2004 indicating that Plaintiff "had no depression now." (ALJ Ruling (Transcript 20)) The ALJ also noted that Plaintiff had reported to Dr. Ginsberg the performance of a number of daily activities, including going to church, housework, grocery shopping, cleaning, watching television, and reading. (*Id.*) Further, the report approved by Dr. Waller, which Plaintiff alleges the ALJ failed to consider, indicates that Plaintiff's mental impairments are not serious.

The ALJ properly considered and explained the weight given to Plaintiff's mental health evaluations. The court's review of the record finds substantial evidence to support the ALJ's finding that Plaintiff's mental disorders "result[] in no more than mild restriction of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace." (ALJ Ruling (Transcript 20))

Plaintiff next objects to the Magistrate Judge's finding that the ALJ sufficiently considered Plaintiff's impairments in combination. Plaintiff contends that the ALJ did not properly consider the combined impact of his mental complications, decreased strength in extremities, liver and back problems, respiratory difficulty, hearing loss, pain from arthritis, and obesity. The court disagrees.

To qualify for disability benefits, an applicant must have an "impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Congress requires that "the combined effect of all of the individual's impairments" be considered, "without regard to whether any such impairment, if considered

separately" would be sufficiently severe. 42 U.S.C. § 423(d)(2)(B). As such, an ALJ "must adequately explain his or her evaluation of the combined effects of the impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (1989).

In this case, in ruling on the combined impact of Plaintiff's impairments, the ALJ relied on the medical evaluations of all of Plaintiff's physicians. As noted, the ALJ discussed reports of how Plaintiff's mental complications were being controlled by medication, and that one of Plaintiff's physicians diagnosed Plaintiff with "no depression now." The ALJ discussed how Plaintiff's complaints of decreased strength in his extremities were contradicted by the treatment notes of his treating physicians. Further, the ALJ noted that Plaintiff's liver function tests were normal in 2004, that Plaintiff's back problems had not limited his ability to perform daily activities, and that Plaintiff's subjective complaints of breathing difficulty were contradicted by medical treatment notes. The ALJ also discussed Plaintiff's hearing loss, which limited his hearing in one ear. There is also no medical evidence of Plaintiff's alleged pain from arthritis. Finally, the ALJ's ruling noted that Plaintiff had lost considerable weight. The court's review of the record demonstrates that the ALJ, in finding that the combined effect of the impairments did not prevent Plaintiff from engaging in light work, adequately considered all of Plaintiff's impairments.

Plaintiff finally objects to the ALJ's finding that the Plaintiff's complaints of pain were not credible. Plaintiff contends that his complaints of physical pain, specifically lumbar and liver associated pain, are well supported by the record and by treatment notes of Plaintiff's physicians. The court disagrees.

The determination of whether a person is disabled by pain or other symptoms is a two-step process. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). First, there must be objective medical

evidence showing the existence of a medical impairment which could reasonably be expected to produce pain or other symptoms alleged. 20 C.F.R. § 416.929(b). After showing a medical impairment reasonably likely to cause the pain claimed, the intensity and persistence of the Plaintiff's pain is evaluated. 20 C.F.R. § 416.929(c)(1). Although a Plaintiff's allegations about his pain may not be discredited solely because it is not substantiated by objective evidence of the pain, allegations of pain need not be accepted to the extent that they are inconsistent with the available medical evidence. *Craig*, 76 F.3d at 595.

The ALJ ruled that "the medical evidence in this case does establish the existence of a medically determinable impairment" capable of producing Plaintiff's alleged physical pain. (ALJ Ruling (Transcript 19)) However, the ALJ ruled that Plaintiff's allegations of intense pain were not credible. Specifically, the ALJ noted

> Considering the claimant's activities, as reported to Dr. Ginsberg; the absence of frequent hospitalizations or emergency room records; the apparent effectiveness of anti-depressant medication; the absence of prescription pain medication since 2000; no report in treatment notes of significant medication side-effects; and improvement in liver function studies with no indication in treatment notes of urgent need for liver transplant, I do not find the allegations of disabling pain and limited functional capacity to be credible.

(ALJ Ruling (Transcript 20))

There is substantial evidence supporting the ALJ's decision. Regarding Plaintiff's lumbar pain, in 1999, Dr. Boyd indicated that "I have tried to reassure [Plaintiff] that his back problems are not out of proportion to many other peoples, and that while he has real and genuine pain, we cannot predict his out come [sic] at this point." One year later, in 2000, Dr. Murray indicated that Plaintiff's persistent neck pain and soreness was resolved. Additionally, as the ALJ stressed, no physician prescribed pain medication to Plaintiff since 2000. Finally, during treatment sessions,

9

Plaintiff did not allege any liver-induced pain, and the record reflects that Plaintiff's liver has improved with treatment. The court finds substantial evidence in the record to support the ALJ's determination that the Plaintiff's allegations of pain were not credible.

### IV.    CONCLUSION.

The court adopts the Report and Recommendation of the Magistrate Judge. For the reasons stated therein and in this order, the court finds that the ALJ's decision is supported by substantial evidence. The decision of the Commissioner is affirmed.

**IT IS SO ORDERED**.

s/ Margaret B. Seymour<br>
Margaret B. Seymour<br>
United States District Judge

March 28, 2007

Columbia, South Carolina